# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re

Case No. _____

Amended

**NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY IN A CHAPTER 11/12 CASE AND NOTICE OF HEARING THEREON**

Debtor

## YOU ARE NOTIFIED THAT:

1. A motion was filed by _____ for relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.

2. The name and address of the moving party's attorney or, if not attorney, the moving party are:

3. If you wish to resist the motion you must, within 14 days of the service date shown below, file a written response with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401. If the response is served in paper, you must also file a certificate showing the response has been served on the moving party's attorney.

4. A response must state the facts upon which relief from the automatic stay is resisted. See Local Bankruptcy Form (LBF) 720.50, Procedures re: Relief from Stay, for details.

5. If you file a timely response, a hearing on the motion, at which witnesses may not testify, will be held as follows:

**Date:**_____        **Time:** _____

**Location**:        Courtroom #_____, _____

Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

Telephone Hearing [*See LBF 888, Telephone Hearing Requirements.*]

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

**Call-In Number:** (888) 684-8852

**Access Code:**      5870400 for Judge David W. Hercher (dwh)

4950985 for Judge Teresa H. Pearson (thp)

3388495 for Judge Thomas M. Renn (tmr)

Other _____

If no timely response is filed, the hearing may be cancelled. Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov after the response deadline has passed.

6. If a timely response is not filed, then either:

    a. The court may sign an order without further notice, submitted by the moving party, granting relief from the stay; or

    b. The stay will expire under the terms of 11 U.S.C. § 362(e).

I certify that on _____ (1) this notice, (2) LBF 720.50 if this notice was served on paper, (3) LBF 888 if this notice was served on paper and a telephone hearing will be held, and (4) the motion, were served pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 4001 and FRBP 7004 on the debtor(s), U.S. trustee, trustee, members of any committee appointed pursuant to 11 U.S.C. § 1102 or its authorized agent [or, if no committee, on all creditors included on the list filed pursuant to FRBP 1007(d)], and their respective attorneys.

_____

Signature of Moving Party or Attorney                    OSB #

_____

(If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#(s)

Miles D. Monson, OSB No. 950981
MONSON LAW OFFICE P.C.
1865 NW 169th Place, Suite 208
Beaverton, OR 97006
Telephone: (503) 828-1820
Facsimile: (503) 828-1893
E-Mail: miles@monsonlawoffice.com

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>RICHARDSON CREEK, LLC<br><br>        Debtor. | Case No.: 23-31698-dwh11<br><br>Chapter 11<br><br>MOTION FOR RELIEF FROM THE AUTOMATIC STAY (THE WHITAKER FAMILY LIMITED PARTNERSHIP) |

The Whitaker Family Limited Partnership ("Whitaker"), the beneficiary on a deed of trust on real property allegedly owned by the Debtor, hereby respectfully moves the Court for relief from the automatic stay under 11 U.S.C. § 362(d) and respectfully represents:

       1.    <u>Jurisdiction</u>. This is a core proceeding over which this court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(G) and 1334 and Local Rule 2100, <u>et. Seq.</u>, of the U.S. District Court for the District of Oregon. The matter in controversy arises under 11 U.S.C. § 362(d), Federal Rules of Bankruptcy Procedure 4001, 9013, and Local Bankruptcy Rules 4001-1 and is related to this Chapter 11 case.

MOTION FOR RELIEF FROM THE AUTOMATIC
STAY (THE WHITAKER FAMILY LIMITED
PARTNERSHIP) – PAGE 1

**MONSON LAW OFFICE P.C.**
**1865 NW 169th Place, Suite 208**
**Beaverton, OR 97006**
**Telephone: 503-828-1820**
**Facsimile: 503-828-1893**

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

2.    <u>Bankruptcy Filing Date</u>. On August 9, 2023 ("Petition Date"), the Debtor allegedly filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. However, the attorney whose name is on the petition and the person signing the petition have represented to the court that they did not sign the petition – see letter to court [Doc 10] attached hereto as Exhibit 1.

3.    <u>The Debt</u>. On or about September 14, 2021, Julie A. Boothby and Michael J. Hanks, as Trustees for the Marlene A. Hanks Family Trust Dated August 29, 2008, executed and delivered to TMI Lending, LLC ("TMI") a promissory note and deed of trust. Whitaker is the owner and holder of the Note by virtue of a purchase and assignment in December 2022. True and authentic copies of the promissory note ("Note") and assignment ("Assignment") are attached hereto as Exhibit 2. The total amount owing on the Note as of the Petition Date was $693,474.03. Whitaker is also entitled to post-petition interest, costs and attorney fees to the extent allowed by applicable law, including 11 U.S.C. §506. The per diem commencing August 10, 2023, is $247.57.

4.    <u>Nature and Perfection of Collateral and Junior Liens.</u>  The Note, dated September 9, 2021, is secured by a trust deed lien in real property located in Clackamas County, Oregon ("Collateral"), commonly known as 16000 SE Keller Rd., Damascus, Oregon 97009. The legal description of the Collateral is attached as Exhibit 3. A true and authentic copy of the original deed of trust recorded September 15, 2021, as document 2021-084602 in the Clackamas County records, is attached as Exhibit 4 ("Trust Deed"). The Trust Deed was assigned, through various assignments, to Whitaker with an assignment recorded January 5, 2023, as document 2023-000452 in the Clackamas County records as noted in Exhibit 2 ("Assignment"). Whitaker is

MOTION FOR RELIEF FROM THE AUTOMATIC STAY (THE WHITAKER FAMILY LIMITED PARTNERSHIP) – PAGE 2

**MONSON LAW OFFICE P.C.**
**1865 NW 169th Place, Suite 208**
**Beaverton, OR 97006**
**Telephone: 503-828-1820**
**Facsimile: 503-828-1893**

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

aware of three (3) other liens or interests in the Collateral that are junior to Whitaker's interest:
1) Steve Gibson, Sarahi Pelayo and Hector Pelayo trust deed in the amount of $250,000; 2)
Arbaugh Law, P.C. in the amount of $51,085.42; and 3) Motschenbacher & Blattner LLP in the
amount of $92,027.72 for a total of $393,112 without interest. The street address for the
Collateral is 16000 SE Keller Road, Damascus, Oregon 97009.

5.    Fair Market Value.  Whitaker believes the fair market value of the Collateral is
approximately $1,386,549. According to a Zestimate on Zillow.com the estimate is $1,365,500
and the value on Realtor.com is estimated to be $1,407,599. The assessed value is $1,351,802
and the property last sold on July 1, 2022, for $850,000. Attached as Exhibit 5 are the Zillow,
Realtor.com and the Lawyer Title property estimates, along with the Clackamas County Property
Account Summary.

6.    Current Status of Loan and Default.  The Note held by Whitaker matured on
September 13, 2022 and the Note is in default for failure to pay the loan balance in full on the
maturity date of September 13, 2022.

7.    Status of Foreclosure.  A foreclosure was commenced on February 28, 2023,
when a Notice of Default and Election to Sell the Collateral was recorded in the real property
records of Clackamas County, Oregon. Attached as Exhibit 6 is the Guarantee For Judicial
Foreclosure, Trustee's Sale, Statutory Land Sale Contract Forfeiture, Or Litigation, as well as the
date down Endorsement.  The sale date was set for August 2, 2023, at 11:00 am. The bankruptcy
case was filed on August 2, 2023 at 10:30 am. The foreclosure sale was postponed, pursuant to
ORS 86.782, due to the Debtor's bankruptcy petition. Because the Note matured on September
13, 2022, the amount necessary to cure the default includes the balance as described in section 3

MOTION FOR RELIEF FROM THE AUTOMATIC
STAY (THE WHITAKER FAMILY LIMITED
PARTNERSHIP) – PAGE 3

**MONSON LAW OFFICE P.C.**
**1865 NW 169th Place, Suite 208**
**Beaverton, OR 97006**
**Telephone: 503-828-1820**
**Facsimile: 503-828-1893**

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

above.

8. <u>Basis for Relief from the Stay.</u> Whitaker requests relief from the automatic stay on the following grounds:

(A) Pursuant to 11 U.S.C. § 362(d)(1) for cause, including a lack of adequate protection in the Collateral. No payments are being made to Whitaker on the obligation secured by the Collateral, and the balance owed to Whitaker continues to accrue.

(B) The Collateral is not necessary for an effective reorganization.

(C) The bankruptcy was not filed in good faith. The Debtor is misrepresenting its real intentions to the court. The Debtor is misrepresenting itself to the court - Julie Boothby is not the authorized representative of the Debtor. The attorney whose name is on the petition and Julie Boothby, whose name is on the petition, have represented to the court that they did not sign the petition. Ms. Boothby has recently sued the Debtor in a state court action. The Debtor's representative, Connie K. Harrell, told Whitaker that the bankruptcy filing was done by Michael J. Hanks without her knowledge. However, on August 8, 2023 [Doc 20] a letter with Harrell's name and signature requested an extension of time to file documents.

(D) When the interest is calculated on the junior liens, Whitaker believes there is little to no equity in the Property.

(E) Besides the fraudulent signature on the petition, the bankruptcy case filed by the Debtor has multiple deficiencies regarding required information

MOTION FOR RELIEF FROM THE AUTOMATIC
STAY (THE WHITAKER FAMILY LIMITED
PARTNERSHIP) – PAGE 4

**MONSON LAW OFFICE P.C.**
**1865 NW 169th Place, Suite 208**
**Beaverton, OR 97006**
**Telephone: 503-828-1820**
**Facsimile: 503-828-1893**

and documents.

     (F)    The filing of the petition was part of a scheme to delay, hinder, or defraud creditors. The petition was filed without the assistance of counsel contrary to LBR 9010-1(c), which provides that a limited liability company must be represented by an attorney. The Debtor fraudulently signed an attorney's name to the petition. The Debtor fraudulently signed Julie Boothby's name to the petition. The Debtor fraudulently represented to the court that Julie Boothby was a member of Richardson Creek, LLC on the petition. The petition presented by the Debtor to the court states a warning that reads, "[B]ankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment up to 20 years, or both." This petition should be investigated for bankruptcy fraud.

9.    <u>In rem Relief From Stay</u>. Whitaker requests in rem relief from stay with respect to the Collateral described herein, such that an order for relief from stay be binding in any other case filed under 11 U.S.C. purporting to affect the Collateral filed not later than two (2) years after the date of entry of such order unless the bankruptcy court in the subsequent case grants relief of such order. This petition for bankruptcy was improperly filed one-half hour before the foreclosure sale of the Property. In rem relief is needed to protect against such abuses in the future.

10.    <u>Waiver of 14-day Stay.</u>  Whitaker requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the petition being filed in bad faith as noted herein.

MOTION FOR RELIEF FROM THE AUTOMATIC
STAY (THE WHITAKER FAMILY LIMITED
PARTNERSHIP) – PAGE 5

**MONSON LAW OFFICE P.C.**
**1865 NW 169th Place, Suite 208**
**Beaverton, OR 97006**
**Telephone: 503-828-1820**
**Facsimile: 503-828-1893**

WHEREFORE, Whitaker respectfully moves the court for an order terminating the automatic stay to allow it to foreclose its lien on the Collateral and to take any necessary action to obtain possession of the Collateral and to grant in rem relief from stay and to waive the 14-day stay provided by FRBP 4001(a)(3).

MONSON LAW OFFICE P.C.


/s/ Miles D. Monson
Miles D. Monson, OSB No. 950981
Attorneys for The Whitaker Family Limited
Partnership

clients/934/002/whitaker.relief.notice.motion

MOTION FOR RELIEF FROM THE AUTOMATIC
STAY (THE WHITAKER FAMILY LIMITED
PARTNERSHIP) – PAGE 6

MONSON LAW OFFICE P.C.
1865 NW 169th Place, Suite 208
Beaverton, OR 97006
Telephone: 503-828-1820
Facsimile: 503-828-1893





**office** 503-222-1812
1030 SW MORRISON ST
PORTLAND, OR 97205
**www.pfglaw.com**

In Reply Please Refer To File No.: 11368.001

August 3, 2023

**VIA PACER**
The Honorable David W. Hercher
1050 SW 6th Ave #700
Portland, OR 97204

     Re:    *In re Richardson Creek, LLC*
         United States Bankruptcy Court / District of Oregon / Case No. 23-31698-dwh11

Dear Judge Hercher:

    At the request of the bankruptcy court staff I am filing this letter to confirm that I did not file the Petition in this matter. My name and my client, Julie Boothby's name, are on the Petition but neither of us signed or authorized our signatures on the Petition or filed it directly or indirectly. On behalf of Ms. Boothby, on June 29, 2023, I filed a lawsuit against, *inter alia*, Richardson Creek, LLC in Clackamas County Circuit Court, case no. 23CV26139.

    If I can otherwise be of assistance, please let me know. Thank you.

        Very truly yours,

        John D. Parsons
        Attorney at Law

JDP:kak
cc: Ms. Boothby (via email)
    Theodore W. Reuter (via email)

---

**JOHN D. PARSONS** *Attorney at Law*
jparsons@pfglaw.com | Admitted in OR & WA

**EXHIBIT 1**
**Page 1 of 2**

O:\11368001\0022 jdp ltr The Honorable David W. Hercher

The Honorable David W. Hercher
August 3, 2023
Page 2


Nicholas J. Henderson (via Pacer and email)
US Trustee's Office/Christian Torimimo (via Pacer and email)

EXHIBIT 1
Page 2 of 2

# PROMISSORY NOTE

$575,000.00                                                            September 9, 2021

FOR VALUE RECEIVED, the undersigned "Borrower," (whether one or more parties) promises to pay to the order of TMI Lending, LLC, an Oregon Limited Liability Company (hereinafter "Lender"), at 810 Walnut St. SW, Albany, OR 97321 or to such other person, entity, or place as Lender may designate, the principal sum of FIVE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100THS U.S. DOLLARS ($575,000.00), or such amount as may be outstanding, together with interest thereon at a fixed rate of Ten and a half Percent (10.5%) per annum. Interest shall be calculated from the date of each advance until date of repayment based on the actual number of days elapsed of a 360-day year.

**Payments.** Borrower shall make interest payments in monthly installments of Five Thousand Thirty-One and Twenty-Five/100ths U.S. Dollars ($5,031.25) each; the first of such installments shall be due on or before October 13, 2021, and continue thereafter on the same day of each and every month (except that for months containing fewer days than the due date, the due date shall be the last day of the month) until September 13, 2022, at which time the entire unpaid principal balance together with accrued interest and other charges described herein shall be due and payable in full ("Maturity Date"). **Borrower understands that it must repay the entire loan amount outstanding on the Maturity Date and that Lender is under no obligation to refinance the loan at that time.**

**Late Charge.** In the event any payment or any portion of any payment, including payment of the entire balance when due, is received more than fifteen days after it is due, there shall be a late charge in the amount of five percent (5%) of the scheduled amount due.

**Default Interest Rate.** After maturity (whether by default, acceleration or otherwise), any amounts outstanding shall bear interest at an annual rate that is five percent (5%) higher than the interest rate otherwise payable hereunder. Any late charge or increased interest rate charge resulting from failure on the part of the undersigned to make payments when due, or other failure to perform as agreed, must be paid as part of curing any default under this Note.

**Place, Time, Form, and Application of Payments.** All payments specified herein shall be deemed made when actually received by Lender. All payments shall be made to Lender at its address set forth above, and shall be made without offset and without prior notice or demand. Payments shall be in lawful money of the United States of America and when received by Lender shall be applied first to all amounts due hereunder other than principal or interest, second to accrued interest, third upon the portion of the principal balance then due, if any, and fourth as a principal payment.

EXHIBIT 2
Page 1 of 7

and in preparation for trial and any appeal or review, such amount to be set by the courts before which the matter is heard. Borrower also agrees to pay any attorneys' fees incurred by Lender in connection with any bankruptcy or similar proceedings wherein Borrower (as defined in Default Section above) is the "debtor".

**Governing Law, Usury; Severability.** This Note has been executed under and shall be construed and enforced in accordance with the laws of the State of Oregon. Borrower hereby submits to the jurisdiction of the courts of the State of Oregon for any dispute regarding this Note. It is expressly stipulated and agreed to be the intent of Borrower and Lender to comply strictly with the applicable usury laws now or hereafter governing consideration received under this Note. If the applicable law is ever interpreted so as to render usurious any consideration called for, contracted for, charged, taken, reserved or received with respect to this Note, or if any prepayment by Borrower or Lender's exercise of the option herein contained to accelerate the maturity of this Note results in Borrower having paid any interest in excess of that permitted by law, then notwithstanding anything to the contrary in this Note, it is Borrower's and Lender's express intent and agreement that all excess amounts theretofore collected by Lender be credited on the principal balance of this Note (or, if this Note has been paid in full, refunded to Borrower) and the provisions of this Note shall immediately be deemed reformed and the amounts thereafter collectible hereunder reduced, without the necessity of the execution of any new documents, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder. If any provision of this Note is found by a court of competent jurisdiction to be invalid or unenforceable as written, then the parties intend and desire that (a) such provision be enforceable to the full extent permitted by law, and (b) the invalidity or unenforceability of such provision shall not affect the validity and enforceability of the remainder of this Note.

**Amendment & Right to Terminate/Renegotiate.** This Note may not be amended, modified or changed, nor shall any provision hereof be deemed waived, except only by an instrument in writing signed by the party against whom enforcement of any such waiver, amendment, change, or modification is sought.

**Waivers; Joint and Several Liability.** Borrower and all sureties and accommodation parties, without affecting their liability hereunder, hereby (a) waive diligence, presentment, protest and demand, (b) waive notice of protest, of demand, of nonpayment, of dishonor and of maturity, and (c) consent to any extension or alteration of the time or terms of payment hereof, any and all renewals, extensions or modifications of the terms hereof, any release of all or any part of any security which may be given for the payment hereof, any acceptance of additional security of any kind, and any release of or resort to any party liable for payment hereof, any of which may be made without notice to any of said parties. Borrower (as defined in Default Section above) and each constituent person and entity of Borrower, agree that they each shall be jointly and severally liable for full payment of this Note and agree to pay the full amount of the principal and interest of the indebtedness evidenced hereby. Unless and to the extent otherwise limited by Default Section above and other express terms of this Note, this Note is executed with recourse against the assets of all persons and entities liable hereunder.

EXHIBIT 2
Page 2 of 7

**Prepayment.** This Note may be prepaid in whole or in part at any time without penalty.

**Default.** Time is of the essence of this Note. A default shall occur if: 1) Borrower fails to make any payment when due; 2) Borrower has made any representation to induce this loan that is false or misleading in any material respect; 3) Borrower fails to perform any other covenant or obligation contained in this Note, loan agreement, or in any trust deed(s) or other instruments securing payment hereof within fifteen (15) days after notice from Lender specifying the nature of the default, or such longer period as may be necessary to perform such cure, if (a) Borrower promptly requests such longer period, in writing, and (b) in Lender's opinion (i) such cure can be completed within a reasonable time, and (ii) the lapse of such time period would not jeopardize Lender's interest in the Property or Lender's ability to collect all amounts due under the Note, and (c) Borrower commences such cure with such fifteen (15) day period and thereafter diligently pursues such cure to completion; and/or 4) Borrower becomes insolvent, a receiver is appointed to take possession of all or a substantial part of Borrower's properties, Borrower makes an assignment for the benefit of creditors or files a voluntary petition in bankruptcy, or Borrower is the subject of an involuntary petition in bankruptcy and such petition is not dismissed within sixty (60) days after being filed. For purposes of this Default Section, if Borrower is a partnership (general or limited), the term "Borrower," as used herein, shall be deemed to include any individual or entity who is a general partner of Borrower, and (b) if this Note is executed by more than one Borrower or co-Borrower or guaranteed by another party, the term "Borrower," as used herein, shall be deemed to include each person or entity who is a Borrower, co-Borrower, or guarantor of this Note.

**Remedies.** In the event of a default, Lender, at its option, may take any one or more of the following steps: 1) declare the entire unpaid principal balance of the debt, plus all interest on such debt and all other charges provided herein, to be immediately due and payable, and exercise any remedy available to Lender under this Note, loan agreement, or any instrument evidencing or securing payment of this Note; 2) pursue any other right or remedy provided herein or specified in any loan agreement, trust deed, pledge, UCC Financing Statement, or any other agreement relating to this loan or included in the loan documents, or as otherwise allowed by law; and/or 3) pursue any such rights or remedies singularly, together or successively. Exercise of any such right or remedy shall not be deemed an election of remedies. Failure to exercise any right or remedy shall not be deemed a waiver of any existing or subsequent default nor a waiver of any such right or remedy.

**Attorneys' Fees and Collection Costs.** Borrower and all sureties and accommodation parties hereof hereby agree to pay all costs of collection hereunder and/or under any guaranty executed in connection herewith, including reasonable attorneys' fees, regardless of whether litigation is actually commenced. In the event the Lender is made party to any litigation by reason of any act or omission of Borrower, then Borrower shall reimburse Lender for its costs and attorneys' fees incurred with respect to such litigation. In the event litigation is commenced by a party hereto to enforce or interpret any provision of this Note, or to collect any amount due hereunder, the prevailing party in such litigation shall be entitled to receive, in addition to all other sums and relief, its reasonable costs and attorneys' fees, incurred both at

EXHIBIT 2
Page 3 of 7

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

**Binding Agreement.** This Note shall be binding upon the heirs, successors and assigns of Borrower.

**Security.** This Note is secured by, among other instruments, a Trust Deed executed on or about the date hereof and is subject to all of its terms and conditions.

**Warranties.** Borrower warrants and represents to Lender that the proceeds of the loan evidenced hereby will be used for business or commercial purposes and will not be used for personal, consumer, residential or household purposes.

**Construction.** This Note and the security documents and guaranties related hereto have been reviewed and negotiated by Borrower and Lender with the benefit of or the opportunity to seek the assistance of legal counsel, and shall not be construed against any party by presumption. The titles and captions contained in this Note are inserted for convenience and shall not be deemed to define, limit, extend or modify any provision of this Note. All references to Lender herein shall include any successor or assign of Lender.

This Promissory Note has been executed as of the date and year first above written.

**BORROWER(S):**
**MICHAEL J. HANKS AND JULIE A. BOOTHBY, AS TRUSTEES OF THE MARLENE A. HANKS FAMILY TRUST DATED AUGUST 29, 2008**

By: Michael J. Hanks, Trustee
Date: _Sept 14_ , 20 _21_

By: Julie A. Boothby, Trustee
Date: _9 | 14_ , 20 _21_

EXHIBIT 2
Page 4 of 7

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

AFTER RECORDING RETURN TO
TICOR TITLE: 360610745

AFTER RECORDING RETURN TO:
TMI Lending, LLC
810 SW Walnut Street
Albany, OR 97321

## ASSIGNMENT OF BENEFICIAL INTEREST IN TRUST DEED

FOR VALUE RECEIVED, the undersigned holders ("Assignors"), who are the beneficiary under that certain Trust Deed recorded September 15, 2021 as Document No. 2021-084602 of the Official Records of Clackamas County, Oregon, which beneficial interest was assigned from TMI Lending, LLC to GLA Investments, LLC (as to an undivided 36.52% or $210,000) and Hendrickus J. Bloemendaal and Nancy C. Bloemendall, Co Trustee of the Bloemendaal Family Trust Dated August 28, 1992 (as to an undivided 63.48% or $365,000) recorded September 15, 2021 as Document No. 2021-084614 of the Official Records of Clackamas County, Oregon and conveying real property in said county commonly known as 16000 SE Keller Road, Damascus, OR 97009, and more particularly described on Exhibit A, attached hereto and incorporated herein ("Trust Deed"), hereby grants, assigns, transfers, sells, and conveys and sets over to The Whitaker Family Limited Partnership, an Oregon limited partnership whose address is 3690 SW Brooklane Dr., Corvallis, OR 97333 ("Assignee"), without recourse, except as set forth in the Assignment Agreement, all of the beneficial interest in and under the Trust Deed, together with the promissory note which is secured by the Trust Deed, monies and obligations therein described or referred to, with the interest thereon, and all rights and benefits whatsoever accrued or to accrue under the Trust Deed.

Assignors hereby covenants to and with the Assignee that the Assignors are the beneficiaries under the Trust Deed and are the owners and holders of the beneficial interest therein, and has the right to sell, transfer and assign the same and the promissory note or other obligation secured thereby.

This Assignment is made "AS IS" without any warranty whatsoever and without any recourse against Assignors, except as set forth in Assignment Agreement.

IN WITNESS WHEREOF, the undersigned has hereunto executed this document this 23 day of December, 2022.

GLA INVESTMENTS, LLC

HENDRIKUS J. BLOEMENDAAL and
NANCY C. BLOEMENDAAL, CO-
TRUSTEES of the BLOEMENDAAL
FAMILY TRUST DATED AUGUST 28, 1992

By: _Guy Allen_
Guy Allen, Manager of GLA Investments, LLC

By: _____N/A_____
Hendrikus J. Bloemendaal, Co-Trustee of the
Bloemendaal Family Trust dated August 28,
1992

STATE OF OREGON            )
                           ) ss.
COUNTY OF _Jackson_        )


     This instrument was acknowledged before me by Guy Allen as Manager of GLA Investments, LLC ~~and Hendrikus J. Bloemendaal as Trustee of the Bloemendaal Family Trust Dated August 28, 1992~~ on _12/23/22_.

My Commission Expires: _03/17/2025_

_____
Signature of Notary

OFFICIAL STAMP
CALVIN RAY GRISHAM
NOTARY PUBLIC · OREGON
COMMISSION NO. 1009896
MY COMMISSION EXPIRES MARCH 17, 2025

Notary Public- State of Oregon (seal)

ASSIGNMENT OF NOTE AND TRUST DEED BY BENEFICIARY – PAGE2

EXHIBIT 2
Page 6 of 7

**EXHIBIT "A"**

**Situs Address:** 16000 SE Keller Road, Damascus, OR 97009

**Legal Description:**

Parcel 2, PARTITION PLAT NO. 2002-058, in the County of Clackamas and State of Oregon.

TOGETHER WITH a 50 foot wide easement for ingress and egress over the West 50 feet of Parcel I, PARTITION PLAT NO. 2002-058.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded October 25, 2000, Document No. 2000-069536.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000894.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000895.

**EXHIBIT "A"**

**Situs Address:** 16000 SE Keller Road, Damascus, OR 97009

**Legal Description:**

Parcel 2, PARTITION PLAT NO. 2002-058, in the County of Clackamas and State of Oregon.

TOGETHER WITH a 50 foot wide easement for ingress and egress over the West 50 feet of Parcel I, PARTITION PLAT NO. 2002-058.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded October 25, 2000, Document No. 2000-069536.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000894.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000895.

AFTER RECORDING RETURN TO:

TMI Lending, LLC
810 Walnut St SW
Albany, OR 97321

Clackamas County Official Records    **2021-084602**
Sherry Hall, County Clerk
                                     09/15/2021 02:29:01 PM

M-TD          Cnt=1 Stn=9 COUNTER1
$40.00 $16.00 $10.00 $62.00                      $128.00

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

Escrow No: 36262107465

## TRUST DEED

THIS TRUST DEED, made on September 9, 2021 between Michael J. Hanks and Julie A. Boothby, as
Trustees of the Marlene A. Hanks Family Trust dated August 29, 2008, whose address is 5974 SW
Bonita Rd, Lake Oswego, OR 97035 as Grantor, Ticor Title Company of Oregon whose address is 220
6th Avenue SW, Suite 100, Albany, OR 97321, as Trustee, and TMI Lending, LLC an Oregon Limited
Liability Company, whose address is 810 Walnut St SW, Albany, OR 97321 as Beneficiary;

*WITNESSETH:* Grantor irrevocably grants, bargains, sells and conveys to Trustee in trust, with power
of sale, the subject property in Clackamas County, Oregon described further in attached Exhibit "A"
which by this reference is made a part thereof the Loan Documents. Together with all and singular
the tenements, hereditaments and appurtenances and all other rights thereunto belonging or in
anywise now or hereafter appertaining and the rents, issues and profits thereof and all fixtures now
or hereafter attached to or used in connection with said real estate.

For the purpose of securing performance of each agreement of Grantor herein contained and
payment of the sum of FIVE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100ths U.S. DOLLARS
($575,000.00), with interest thereon according to the terms of a Promissory Note executed on or
about the date hereof, payable to Beneficiary or order and made by Grantor, the final payment of
principal and interest hereof, if not sooner paid, to be due and payable September 13, 2021. The
date of maturity of the debt secured by this instrument is the date, stated above, on which the final
installment of said Note becomes due and payable. In the event the within-described properties, or
any parts thereof, or any interest therein is sold, agreed to be sold, conveyed, assigned or alienated
by the Grantor without first having obtained the written consent or approval of the Beneficiary, then,
at the Beneficiary's option, all obligation secured by this instrument, irrespective of the maturity
dates expressed therein, or herein, shall become immediately due and payable.

### To protect the security of this Trust Deed, Grantor agrees:

1. To protect, preserve and maintain the property in good condition and repair; not to remove or
   demolish any building or improvement; and not to commit or permit any waste of the property.

2. To complete or restore promptly and in good and workmanlike manner any building or
   improvement which now exists or may be constructed, and which is damaged or destroyed
   thereon, and pay when due all costs incurred.

EXHIBIT 4
Page 1 of 9

Case 23-31698-dwh11   Doc 23   Filed 08/11/23

TMI Lending, LLC
810 Walnut St SW
Albany, OR 97321

AFTER RECORDING RETURN TO
TICOR TITLE: 36262107465 | 471821110996

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

Escrow No: 36262107465

### TRUST DEED

THIS TRUST DEED, made on September 9, 2021 between Michael J. Hanks and Julie A. Boothby, as Trustees of the Marlene A. Hanks Family Trust dated August 29, 2008, whose address is 5974 SW Bonita Rd, Lake Oswego, OR 97035 as Grantor, Ticor Title Company of Oregon whose address is 220 6th Avenue SW, Suite 100, Albany, OR 97321, as Trustee, and TMI Lending, LLC an Oregon Limited Liability Company, whose address is 810 Walnut St SW, Albany, OR 97321 as Beneficiary;

*WITNESSETH:* Grantor irrevocably grants, bargains, sells and conveys to Trustee in trust, with power of sale, the subject property in Clackamas County, Oregon described further in attached Exhibit "A" which by this reference is made a part thereof the Loan Documents. Together with all and singular the tenements, hereditaments and appurtenances and all other rights thereunto belonging or in anywise now or hereafter appertaining and the rents, issues and profits thereof and all fixtures now or hereafter attached to or used in connection with said real estate.

For the purpose of securing performance of each agreement of Grantor herein contained and payment of the sum of FIVE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100ths U.S. DOLLARS ($575,000.00), with interest thereon according to the terms of a Promissory Note executed on or about the date hereof, payable to Beneficiary or order and made by Grantor, the final payment of principal and interest hereof, if not sooner paid, to be due and payable September 13, 2021. The date of maturity of the debt secured by this instrument is the date, stated above, on which the final installment of said Note becomes due and payable. In the event the within-described properties, or any parts thereof, or any interest therein is sold, agreed to be sold, conveyed, assigned or alienated by the Grantor without first having obtained the written consent or approval of the Beneficiary, then, at the Beneficiary's option, all obligation secured by this instrument, irrespective of the maturity dates expressed therein, or herein, shall become immediately due and payable.

### To protect the security of this Trust Deed, Grantor agrees:

1. To protect, preserve and maintain the property in good condition and repair; not to remove or demolish any building or improvement; and not to commit or permit any waste of the property.

2. To complete or restore promptly and in good and workmanlike manner any building or improvement which now exists or may be constructed, and which is damaged or destroyed thereon, and pay when due all costs incurred.

EXHIBIT 4
Page 2 of 9

3. To comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the property; if the Beneficiary so requests, to join in executing such financing statements pursuant to the Uniform Commercial Code as the Beneficiary may require, and to pay for filing the same in the proper public office or offices, as well as the cost of all lien searches made by filing officers or searching agencies as may be deemed desirable by the Beneficiary.

4. To provide and continuously maintain insurance on the buildings now or hereafter erected on the property against loss or damage by fire and other hazards as the Beneficiary may from time to time require, in an amount not less than the full insurable replacement value of said improvements, written by companies acceptable to the Beneficiary, with loss payable to the Beneficiary. Grantor shall also maintain public liability and property damage Insurance with limits not less than $150,000.00 for injury to one person and $250,000.00 to two or more persons in one occurrence, and in no case less than $50,000.00 for damage to property. All policies of Insurance shall be delivered to the Beneficiary as soon as issued. If the Grantor shall fail for any reason to procure any such insurance and to deliver the policies to the Beneficiary at least Fifteen (15) days prior to the expiration of any policy of Insurance now or hereafter placed on the buildings, the Beneficiary may procure the same at Grantor's expense. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected, or any part thereof, may be released to Grantor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. Such insurance shall cover all risks arising directly or indirectly out of Grantor's activities on or any condition of the property, whether or not related to an occurrence caused or contributed to by Beneficiary's alleged negligence; and shall protect Beneficiary and Grantor against claims of third persons. Such policies shall be written in such form, with such other terms and by such insurance companies reasonably acceptable to Beneficiary. Grantor shall deliver to Beneficiary certificates of coverage from each insurer containing a stipulation that coverage will not be canceled or diminished without a minimum of thirty (30) days written notice to Beneficiary.

5. To keep the property free from construction liens and to pay all taxes, assessments and other charges levied or assessed upon or against the property before any part of such taxes, assessment and other charges become past due or delinquent and promptly deliver receipts to Beneficiary. Should the Grantor fail to make payment of any taxes, assessments insurance premiums, liens or other charges payable by Grantor, either by direct payment or by providing Beneficiary with funds with which to make such payment, Beneficiary may, at its option, make payment, and the amount so paid, with interest at the rate set forth in the Note secured hereby, together with the obligations described in paragraphs 6 and 7 of this Trust Deed, shall be added to and become a part of the debt secured by this Trust Deed. Such payment by Beneficiary shall not act as a waiver of any rights arising from any breach. For such payments, and interest thereon, the property described, as well as the Grantor, shall be bound to the same extent that they are bound for the payment of the obligation herein described. All such payments shall be immediately due and payable without notice, and the nonpayment thereof shall, at the option of the Beneficiary, render all sums secured by this Trust Deed immediately due and payable and constitute a breach of this Trust Deed.

EXHIBIT 4
Page 3 of 9

6. To pay all costs, fees and expenses of this Trust Deed including the cost of title search as well as the other costs and expenses of the Trustee incurred in connection with or in enforcing this obligation and Trustee's fees and attorney's fees actually incurred.

7. To appear in and defend any action or proceeding purporting to affect the security rights or powers of Beneficiary or Trustee; and in any suit, action or proceeding in which the Beneficiary or Trustee may appear, including any suite for the foreclosure of this Trust Deed or any suit or action related to this instrument, including but not limited to its validity and/or enforceability, to pay all costs and expenses, including evidence of title and the Beneficiary's or Trustee's attorney fees. The amount of attorney's fees mentioned in this paragraph in all cases shall be fixed by the trial court, and in the event of any appeal from any judgment or decree of the trial court, Grantor further agrees to pay such sum as the appellate court shall adjudge reasonable as the Beneficiary's or Trustee's attorney fees on such appeal.

8. It is mutually agreed that:
   In the event that any portion or all of the property shall be taken under the right of eminent domain or condemnation, Beneficiary shall have the right, if it so elects, to require that all or any portion of the monies payable as compensation for such taking which are in excess of the amount required to pay all reasonable costs, expenses and attorney fees necessarily paid by Grantor in such proceedings, shall be paid to Beneficiary and applied by it first upon any reasonable costs and expenses and attorney fees, both in the trial and appellate courts, necessarily paid or incurred by Beneficiary in such proceedings, and the balance applied upon the indebtedness secured hereby. Grantor agrees, at its own expense, to take such actions and execute such instruments shall be necessary in obtaining such compensation, promptly upon Beneficiary's request.

9. At any time, and from time to time upon written request of Beneficiary, payment of its fees and presentation of this Trust Deed and the Note for endorsement (in case of full reconveyances, for cancellation), without affecting the liability of any person for the payment of the indebtedness, Trustee may (a) consent to the making of any map or plat of the property; (b) join in granting any easement or creating any restriction thereon; (c) join in any subordination or other agreement affecting this Trust Deed or the lien or charge thereof; or (d) reconvey, without warranty, all or any part of the property. The Grantee in any reconveyance may be described as the "person or persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness thereof.

10. Upon any default by Grantor hereunder, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness secured hereby, enter upon and take possession of the property or any part thereof, in its own name sue or otherwise collect the rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney fees upon any indebtedness secured hereby, and in such order as Beneficiary may determine.

EXHIBIT 4
Page 4 of 9

11. The entering upon and taking possession of the property, the collection of such rents, issues and profits, or the proceeds of fire and other insurance policies or compensation or awards for any taking or damage of the property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder, or invalidate any act done pursuant to such notice.

12. Upon default by Grantor in payment of any indebtedness secured hereby or in Grantor's performance of any agreement hereunder, time being of the essence with respect to such payment and/or performance, the Beneficiary may declare all sums secured hereby immediately due and payable. In such event, the Beneficiary may elect to proceed to foreclose this Trust Deed in equity as a mortgage or direct the Trustee to foreclose this Trust Deed by advertisement and sale, or may direct the Trustee to pursue any other right or remedy, either at law or in equity, which the Beneficiary may have. In the event the Beneficiary elects to foreclose by advertisement and sale, the Beneficiary or the Trustee shall execute and cause to be recorded a written notice of default and election to sell the property to satisfy the obligation secured hereby whereupon the Trustee shall fix the time and place of sale, give notice as then required by law and proceed to foreclose this Trust Deed in the manner provided by law.

13. After the Trustee has commenced foreclosure by advertisement and sale, and at any time prior the time provided by law before the date the Trustee conducts the sale, the Grantor or any other person so privileged by law, may cure the default or defaults. If the default consists of a failure to pay, when due, sums secured by the Trust Deed, the default may be cured by paying the entire amount due at the time of the cure other than such portion as would not then be due had no default occurred. Any other default that is capable of being cured may be cured by tendering the performance required under the obligation or Trust Deed. In any case, in addition to curing the default or defaults, the person effecting the cure shall pay to the Beneficiary all costs and expenses actually incurred in enforcing the obligation of the Trust Deed together with Trustee's and attorney fees not exceeding the amounts provided by law.

14. Otherwise, the sale shall be held on the date and at the time and place designated in the notice of sale or the time to which the sale may be postponed as provided by law. The Trustee may sell the property either in one parcel or in separate parcels and shall sell the parcel or parcels at auction to the highest bidder for cash, payable at the time of sale. The Beneficiary shall be entitled to credit bid the amounts due hereunder in lieu of paying cash at the sale. The Trustee shall deliver to the purchaser a Trustee's deed in form as required by law conveying the property so sold, but without any covenant or warranty, express or implied. The recital in the deed of any matters of fact shall be conclusive proof of their truthfulness. Any person, excluding the Trustee, but including the Grantor and Beneficiary may purchase at the sale.

15. When Trustee sells pursuant to the powers provided herein, Trustee shall apply the proceeds of sale to payment of: (1) the expenses of sale, including the compensation of the Trustee and a reasonable charge by Trustee's attorney; (2) to the obligation secured by the Trust Deed; (3) to all persons having recorded liens subsequent to the interest of the Trustee in the Trust Deed as their

EXHIBIT 4
Page 5 of 9

interests may appear in the order of their priority; and (4) the surplus, if any, to the Grantor or to any successor in interest entitled to such surplus.

16. Beneficiary may, from time to time, appoint a successor or successors to any Trustee named herein or to any successor Trustee appointed hereunder. Upon such appointment, and without conveyance to the successor Trustee, the latter shall be vested with all title, powers and duties conferred upon any Trustee herein named or appointed hereunder. Each such appointment and substitution shall be made by written instrument executed by Beneficiary, which, when recorded in the records of the county or counties in which the property is situated, shall be conclusive proof of proper appointment of the successor Trustee.

17. Trustee accepts this trust when this deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Grantor, Beneficiary or Trustee shall be a party unless such action or proceeding is brought by Trustee.

The Grantor covenants to and agrees with the Beneficiary and the Beneficiary's successor in interest that the Grantor is lawfully seized in fee simple of the real property and has a valid, unencumbered title thereto, except as may be set forth in any exhibit attached hereto, and that the Grantor will warrant and forever defend the same against all persons whomsoever.

WARNING: Unless Grantor provides Beneficiary with evidence of the insurance coverage as required by the contract or loan agreement between them, Beneficiary may purchase insurance at Grantor's expense to protect Beneficiary's interest. This insurance may, but need not, also protect Grantor's interest. If the collateral becomes damaged, the coverage purchased by Beneficiary may not pay any claim made by or against Grantor. Grantor may later cancel this coverage by providing evidence that Grantor has obtained property coverage elsewhere. Grantor is responsible for the cost of any insurance purchased by Beneficiary, which cost may be added to Grantor's contract or loan balance. If it is so added, the interest rate on the underlying contract or loan will apply to it. The effective date of coverage may be the date Grantor's prior coverage lapsed or the date Grantor failed to provide proof of coverage. The coverage Beneficiary purchases may be considerably more expensive than insurance Grantor might otherwise obtain on its own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

The Grantor warrants that the proceeds of the loan represented by the above described Note and this Trust Deed are for business or commercial purposes and not for personal, consumer, residential or household purposes.

This Trust Deed applies to, inures to the benefit of, and binds all parties, their heirs, legatees, devisees, administrators, executors, personal representatives, successors and assigns. The term Beneficiary shall mean the holder and owner, including pledges, of the contract secured, whether or not named as a Beneficiary.

EXHIBIT 4
Page 6 of 9

In construing this Trust Deed, it is understood that the Grantor or Beneficiary may be more than one person; that if the context so requires, the singular shall be taken to mean and include that plural, and that generally all grammatical changes shall be made, assumed and implied to make the provisions apply equally to corporations and to individuals.

Note: The Trust Deed Act provides that the Trustee must be either an attorney, who is an active member of the Oregon State Bar, a bank, a trust company or savings and loan association authorized to do business under the laws of Oregon or the United States, a title insurance company authorized to insure title to real property of this state, its subsidiaries, affiliates, agents or branches, the United States or any agency thereof, or an escrow agent licensed under state law. IN WITNESS WHEREOF, the Grantor has executed this instrument the day and year first written above.

GRANTOR(S):
MICHAEL J. HANKS AND JULIE A. BOOTHBY, AS TRUSTEES OF THE MARLENE A. HANKS FAMILY TRUST DATED AUGUST 29, 2008

By: Michael J. Hanks, Trustee
DATE: Sept 14 , 2021

By: Julie A. Boothby, Trustee
DATE: Sept 14 , 2021

State of _Oregon_ )
) SS:
County of _Linn_ )

This instrument was acknowledged before me by, Michael J. Hanks and Julie A. Boothby, as Trustees of the Marlene A. Hanks Family Trust Date August 29, 2008 on Sept. 14th 2021

*Signature Notary Public for Oregon:* _____

*My Commission expires:* 12/3/2021

OFFICIAL STAMP
DANIELLE LYNN HAYDEN
NOTARY PUBLIC - OREGON
COMMISSION NO. 989307
MY COMMISSION EXPIRES DECEMBER 03, 2021

EXHIBIT 4
Page 7 of 9

# BALLOON RIDER

THIS BALLOON RIDER is made this 9/9/2021, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Trust Deed or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to TMI Lending, LLC an Oregon Limited Liability Company (the "Lender") of the same date and covering the properties described in the Security Instrument and located at:

See Attached Exhibit "A"

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE A PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

**BORROWER(S):**
**MICHAEL J. HANKS AND JULIE A. BOOTHBY, AS TRUSTEES OF THE MARLENE A. HANKS FAMILY TRUST DATED AUGUST 29, 2008**

By: Michael J. Hanks, Trustee

By: Julie A. Boothby, Trustee

EXHIBIT 4
Page 8 of 9

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

# EXHIBIT "A"

**Situs Address:** 16000 SE Keller Road, Damascus, OR 97009

**Legal Description:**

Parcel 2, PARTITION PLAT NO. 2002-058, in the County of Clackamas and State of Oregon.

TOGETHER WITH a 50 foot wide easement for ingress and egress over the West 50 feet of Parcel I, PARTITION PLAT NO. 2002-058.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded October 25, 2000, Document No. 2000-069536.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000894.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000895.

EXHIBIT 4
Page 9 of 9

Case 23-31698-dwh11    Doc 23    Filed 08/11/23



For Sale

**$1,365,500** -- bd | -- ba | **4,776** sqft

16000 SE Keller Rd, Damascus, OR 97089

Pre-foreclosure / auction | Zestimate®: **$1,365,500**

| Get more info |
| --- |

Overview    Facts and features    Foreclosure information    Home value    Price and tax histor

Singlefamily

Built in 2001

No data

No data

No data

19.99 Acres

$286 price/sqft

## Overview

This is a 4776 square foot, single family home. This home is located at 16000 SE Keller Rd
97089.

**163 days** on Zillow        |        **58** views        |        **0** saves

Listed by:



**Get pre-qualified for a loan**

At Zillow Home Loans, we can pre-qualify you in as little as 3 minutes with no
credit score.

**Start now**

ZILI

EXHIBIT 5
Page 1 of 7



Realtor.com® Real Estate ...
★★★★★ 314,000+

Open app

🏠 **realtor.com**

< | Address, City, ZIP, or Neighborhood | | Public | Owner

♡ ↗

See My Home Equity Now

Off Market

**Interested in selling your home?**
Estimated home value*

**$1,407,599**

| See your selling options |

*Estimation is calculated based on tax assessment records, recent sale prices of comparable properties, and other factors.

**19.99** acre lot

16000 SE Keller Rd,
Damascus, OR 97089

**View on Map** ⊙

🏠 **Other**
Property type

📐 **2001**
Year built

| Owner View |  | Connect with an agent |

**EXHIBIT 5** ✕
**Page 2 of 7**



## Lawyers Title

**Property Profile Report**

### 16000 SE KELLER RD DAMASCUS, OR 97089-7828

#### Ownership Information

**Owner Name:**

  RICHARDSON CREEK LLC,

**Mailing Address:**

  18581 TIMBERGROVE CT LAKE OSWEGO, OR 97035-8231

#### Property Description

| | | | |
|---|---|---|---|
| **County:** | Clackamas | | |
| **Map / Tax Lot:** | 23E08C /00101 | | |
| **Account Num:** | 05006313 | **Census:** | |
| **Property ID:** | 23E08C 00101 | **Owner Occ.:** | No |
| **Land Use:** | Rural/Agricultural Residence | **Zoning:** | AGF |
| **Subdivision:** | | | |

**Legal Description:** PARTITION PLAT 2002-058 PARCEL 2

#### Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| **Property Type:** | RURAL RESIDENCE | **Building SF:** | | **Heat:** | |
| **House Style:** | | **Living Area SF:** | | **Cooling:** | |
| **Year Built:** | 2001 | **Square Feet:** | | **Foundation:** | |
| **Bedrooms:** | | **1st Floor SF:** | | **Exterior:** | |
| **Bathrooms:** | | **2nd Floor SF:** | | **Roof Style:** | |
| **Lot Size:** | 870,764 | **3rd Floor SF:** | | **Roof Cover:** | |
| **Acres:** | 19.99 | **Attic SF:** | | **Fireplaces:** | |
| **Garage Type:** | | **Bsmnt SF:** | | **Bsmnt Type:** | |
| **Garage SF:** | | **Fin Bsmt SF:** | | | |

#### Assessment Information

| | | | |
|---|---|---|---|
| **Real Market Value:** | $ 1,351,802 | **Taxes:** | $ 8,302.06 |
| **Land Value:** | $ 559,632 | **Imp. Value:** | $ 792,170 |
| **Total Assessed Value:** | $ 539,845 | **Levy Code:** | 026-009 |
| **Assessed Year:** | 2022 | **Tax Year:** | 2022 |
| | | **M-5 Rate:** | 15.3555 |

#### Previous Sale Information

| | | | |
|---|---|---|---|
| **Sale Amount:** | $ 850,000 | **Sale Date:** | 07/01/2022 |
| **Document Num:** | 2022-039462 | | |

EXHIBIT 5
Page 3 of 7

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

Property Search (/default.aspx) / Search Results (/results.aspx) / Property Summary

# Property Account Summary



05006313

| Account Number | 05006313 | Property Address | 16000 SE KELLER RD , DAMASCUS, OR 97089 |
|---|---|---|---|

### General Information

| | |
|---|---|
| Alternate Property # | 23E08C 00101 |
| Property Description | Partition Plat 2002-058 PARCEL 2 |
| Property Category | Land &/or Buildings |
| Status | Active, Locally Assessed, Use Assessed |
| Tax Code Area | 026-009 |
| Remarks | |

### Tax Rate

| Description | Rate |
|---|---|
| Total Rate | 15.3786 |

### Property Characteristics

| | |
|---|---|
| Property Tax Deferral | Potential Additional Tax Liability |
| Neighborhood | 16064: Gresham School Dist 26 all other |
| Land Class Category | 541: Non EFU farmland improved |
| Building Class Category | 15: Single family res, class 5 |
| Year Built | 2001 |
| Acreage | 19.99 |
| Change property ratio | 5XX |

### Related Properties

No Related Properties Found

### Parties

| Role | Percent | Name | Address |
|---|---|---|---|

**EXHIBIT 5**
**Page 4 of 7**

| Taxpayer | 100 | RICHARDSON CREEK LLC | 18581 SW TIMBERGROVE CT, LAKE OSWEGO, OR 97035 |
| Owner | 100 | RICHARDSON CREEK LLC | 18581 SW TIMBERGROVE CT, LAKE OSWEGO, OR 97035 |

## Property Values

| Value Type | Tax Year 2022 | Tax Year 2021 | Tax Year 2020 | Tax Year 2019 | Tax Year 2018 |
|---|---|---|---|---|---|
| AVR Total | $539,845 | $524,125 | $508,865 | $494,054 | $479,664 |
| Exempt | | | | | |
| TVR Total | $539,845 | $524,125 | $508,865 | $494,054 | $479,664 |
| Real Mkt Land | $559,632 | $466,703 | $417,142 | $404,752 | $382,036 |
| Real Mkt Bldg | $792,170 | $668,420 | $596,530 | $586,880 | $564,430 |
| Real Mkt Total | $1,351,802 | $1,135,123 | $1,013,672 | $991,632 | $946,466 |
| M5 Mkt Land | $72,894 | $60,789 | $54,334 | $52,720 | $49,761 |
| M5 Mkt Bldg | $792,170 | $668,420 | $596,530 | $586,880 | $564,430 |
| M5 SAV | $39,806 | $39,806 | $40,447 | $40,592 | $38,852 |
| SAVL (MAV Use Portion) | $12,220 | $11,867 | $11,527 | $11,201 | $10,875 |
| MAV (Market Portion) | $527,625 | $512,258 | $497,338 | $482,853 | $468,789 |
| Mkt Exception | | | | | |
| AV Exception | | | | | |

## Active Exemptions

No Exemptions Found

## Events

| Effective Date | Entry Date-Time | Type | Remarks |
|---|---|---|---|
| 05/22/2023 | 05/22/2023 08:53:00 | Current Use Removal--To Year Value Set | 2.00 AC FORESTLAND TO UZF FOR 2015 - Effective to year 2022 Designated Forestland by YUMILIT |
| 03/07/2023 | 03/07/2023 11:05:00 | Annexation Completed For Property | ANNEX TO HAPPY VALLEY ORD 563-annexed by CITY OF HAPPY VALLEY for 2023-Revise District Membership by DEENAMEH |
| 07/01/2022 | 07/13/2022 13:41:00 | Taxpayer Changed | Property Transfer Filing No.: 416032 07/11/2022 by SMALSOM |

**EXHIBIT 5**
**Page 5 of 7**

| | | | |
|---|---|---|---|
| 07/01/2022 | 07/13/2022 13:41:00 | Recording Processed | Property Transfer Filing No.: 416032, Quit Claim Deed, Recording No.: 2022-039462 07/11/2022 by SMALSOM |
| 02/12/2020 | 02/20/2020 14:29:00 | Recording Processed | Property Transfer Filing No.: 366992, Bargain & Sale, Recording No.: 2020-010368 02/12/2020 by KARLYNW |
| 02/12/2020 | 02/20/2020 14:29:00 | Taxpayer Changed | Property Transfer Filing No.: 366992 02/12/2020 by KARLYNW |
| 05/26/2015 | 05/26/2015 07:32:00 | Property Use Approval | 2.00 Additional acres designated as UZF totaling 13.89 acres for 2015. |
| 09/05/2008 | 09/25/2008 11:45:00 | Recording Processed | Property Transfer Filing No.: 181783, Bargain & Sale, Recording No.: 2008-062149 09/05/2008 by LAURIEB |
| 09/05/2008 | 09/25/2008 11:44:00 | Taxpayer Changed | Property Transfer Filing No.: 181783 09/05/2008 by LAURIEB |
| 09/05/2008 | 09/24/2008 16:31:00 | Recording Processed | Property Transfer Filing No.: 181767, Bargain & Sale, Recording No.: 2008-062148 09/05/2008 by LAURIEB |
| 09/05/2008 | 09/24/2008 16:31:00 | Taxpayer Changed | Property Transfer Filing No.: 181767 09/05/2008 by LAURIEB |
| 06/22/2004 | 06/22/2004 13:07:00 | Tax Bill Recalculation | Tax Recalculation Performed 06/22/2004 by JUDYHAM TRC 2003-1721 FOR 2003-04 |
| 06/22/2004 | 06/22/2004 13:06:00 | Value Modification | Type: Magistrate Order, Status: Approved, Tax Year: 2003 by JUDYHAM TRC 2003-1721 |
| 01/08/2003 | 01/08/2003 09:47:00 | Property Use Approval | Approved Farm Deferral 2003 (PT USE FROM PARENT TL 100) by LAURIEB |
| 01/08/2003 | 01/08/2003 09:46:00 | Property Use Approval | Approved Designated Forestland 2003 (PT USE FROM PARENT TL 100) by LAURIEB |
| 01/08/2003 | 01/08/2003 09:45:00 | Created by Seg/Merge | SM030198 EFFECTIVE 2003-04: PARENT 23E08C 00100 BY P PLAT 2002-058; BEFORE 01/01/2003, Effective: 01/02/2002 by LAURIEB |

## Tax Balance

No Charges are currently due. If you believe this is incorrect, please contact the Assessor's Office.

Total Due only includes the current 2022 taxes. Please select View Detailed Statement for a full payoff.

Installments Payable/Paid for Tax Year(Enter 4-digit Year, then Click-Here): | 2022 |

## Receipts

| Date | Receipt No. | Amount Applied to Parcel | Total Amount Due | Receipt Total | Change |
|---|---|---|---|---|---|

EXHIBIT 5
Page 6 of 7

| | | | | |
|---|---|---|---|---|
| 10/26/2022 09:57:00 | 5201826 (ReceiptDetail.aspx?receiptnumber=5201826) | $8,302.06 | $8,302.06 | $8,053.00 | $0.00 |
| 10/11/2022 08:53:00 | 5200161 (ReceiptDetail.aspx?receiptnumber=5200161) | $8,915.61 | $8,915.61 | $8,915.61 | $0.00 |
| 03/28/2022 12:02:00 | 5185623 (ReceiptDetail.aspx?receiptnumber=5185623) | $92.87 | $0.00 | $92.87 | $0.00 |
| 06/24/2021 12:11:00 | 5009186 (ReceiptDetail.aspx?receiptnumber=5009186) | $8,230.61 | $8,334.80 | $8,230.61 | $0.00 |
| 02/18/2020 17:30:00 | 4795360 (ReceiptDetail.aspx?receiptnumber=4795360) | $7,727.60 | $7,727.60 | $7,727.60 | $0.00 |
| 11/06/2018 00:00:00 | 4459300 (ReceiptDetail.aspx?receiptnumber=4459300) | $7,245.66 | $7,245.66 | $7,028.29 | $0.00 |

## Sales History

| Sale Date | Entry Date | Recording Date | Recording Number | Sale Amount | Excise Number | Deed Type | Grantee(Buyer) | Other Parce |
|---|---|---|---|---|---|---|---|---|
| 07/08/2022 | 07/13/2022 | 07/01/2022 | 2022-039462 | $850,000.00 | 416032 | | RICHARDSON CREEK LLC | No |
| 02/12/2020 | 02/20/2020 | 02/12/2020 | 2020-010368 | $0.00 | 366992 | | HANKS MICHAEL J TRUSTEE | No |
| 08/29/2008 | 09/25/2008 | 09/05/2008 | 2008-062149 | $0.00 | 181783 | | HANKS MARLENE A TRUSTEE | No |
| 08/29/2008 | 09/24/2008 | 09/05/2008 | 2008-062148 | $0.00 | 181767 | | HANKS MARLENE A | No |

## Property Details

| Living Area Sq Ft | Manf Struct Size | Year Built | Improvement Grade | Stories | Bedrooms | Full Baths | Half Baths |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

Printable Version

Developed by Aumentum Technologies.

@2005-2020 All rights reserved.

Version 4.5.0.0

EXHIBIT 5
Page 7 of 7

# GUARANTEE FOR JUDICIAL FORECLOSURE, TRUSTEE'S SALE, STATUTORY LAND SALE CONTRACT FORFEITURE, OR LITIGATION

Issued By:

**CHICAGO TITLE INSURANCE COMPANY**

Guarantee Number:

**36262300119**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HERETO ANNEXED AND MADE A PART OF THIS GUARANTEE, CHICAGO TITLE INSURANCE COMPANY, a Florida corporation, herein called the Company, for the fee paid for this Guarantee, the amount and effective date of which are shown herein, hereby guarantees the parties herein called the Assured, against actual loss not exceeding the liability amount stated herein which the Assured shall sustain by reason of any incorrectness in the assurance which the Company hereby gives that, according to the public records, on the effective date stated herein,

1. The title to the estate or interest described on Exhibit 1 was vested in the vestee named on Exhibit 1, subject to the matters shown as Exceptions on Exhibit 1, which Exceptions are not necessarily shown in the order of their priority;

2. If applicable, the necessary parties to be made defendants in a suit to enforce the encumbrance identified on Exhibit 1 are as shown on Exhibit 2;

3. If applicable, the names and addresses, as shown therein, of persons who have recorded requests, under Section 86.806 of the Oregon Revised Statutes, for a copy of notice of default or for a copy of notice of sale are as shown on Exhibit 2, and the names of additional persons who, under Sections 86.705 et seq. of the Oregon Revised Statutes, are entitled to receive notice of sale are as shown on Exhibit 2;

4. If applicable, the names of persons entitled to receive notice of defaults, pursuant to Sections 93.905 et seq. of the Oregon Revised Statutes, are shown on Exhibit 2.

IN WITNESS WHEREOF, CHICAGO TITLE INSURANCE COMPANY has caused this Guarantee to be signed and sealed by its duly authorized officers.

Issuing Office or Agent:
**Ticor Title Company of Oregon**
1433 SW 6th Ave.
Portland, OR 97201
(503)646-4444     FAX (503)469-4198

Countersigned By:

_____
Matthew London
Authorized Officer or Agent

**Chicago Title Insurance Company**

By: _____
Michael J. Nolan, President

Attest: _____
Marjorie Nemzura, Secretary

EXHIBIT 6
Page 1 of 11

## EXHIBIT 1

| Effective Date | Liability | Fee |
|---|---|---|
| January 6, 2023 at 08:00 AM | $578,000.00 | $1,467.00 |

A.  The Assured is:

    The Whitaker Family Limited Partnership

B.  The encumbrance to be enforced is:

    A deed of trust to secure an indebtedness in the amount shown below,

    Amount:    $575,000.00
    Dated:  August 29, 2008
    Trustor/Grantor:Michael J. Hanks and Julie A. Boothby, as trustees of the Marlene A. Hanks Family Trust, Dated August 29, 2008
    Trustee:    Ticor Title Company of Oregon
    Beneficiary:    TMI Lending, LLC an Oregon Limited Liability Company
    Loan No.:    Not disclosed
    Recording Date:September 15, 2021
    Recording No.:  2021-084602

C.  The estate or interest in the land which is covered by this Guarantee is:

    A fee.

D.  Title to the estate or interest in the land is vested, as of the effective date, in:

    Richardson Creek LLC, an Oregon limited liability company

E.  The Land referred to in this Guarantee is described as follows:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

F.  As of the effective date, the land covered by this Guarantee is subject to the following Exceptions:

    1.    The Land has been classified as Farmland, as disclosed by the tax roll.  If the Land becomes disqualified, said Land may be subject to additional taxes and/or penalties.

    2.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

        Granted to:    Portland General Electric Company, an Oregon corporation
        Purpose:    Underground electric power lines and appurtenances
        Recording Date:    December 28, 1972
        Recording No:    72-039212
        Affects:    Reference is hereby made to said document for full particulars and as delineated on the recorded Partition Plat

**EXHIBIT 6**
**Page 2 of 11**

## EXHIBIT 1
(continued)

3.     Terms, provisions and conditions, including, but not limited to, maintenance provisions, and a covenant to share the costs of maintenance, contained in Reciprocal Easement Agreement

    Recording Date:      October 25, 2000
    Recording No.:       2000-069536

4.     Terms, provisions and conditions, including, but not limited to, maintenance provisions, and a covenant to share the costs of maintenance, contained in Easement

    Recording Date:      January 5, 2001
    Recording No.:       2001-000894

5.     Terms, provisions and conditions, including, but not limited to, maintenance provisions, and a covenant to share the costs of maintenance, contained in Easement

    Recording Date:      January 5, 2001
    Recording No.:       2001-00895

6.     State of Oregon Well Ownership Information Form

    Well Identification No.:    L44599
    Recording Date:      January 23, 2001
    Recording No.:       2001-004862

7.     Reserved Special Power of Appointment, as reserved in Bargain and Sale Deed, including the terms and provisions thereof

    Reserved by:            Franklin R. Hanks
    Recording Date:  September 5, 2008
    Recording No.:             2008-062148

8.     A deed of trust to secure an indebtedness in the amount shown below,

    Amount:            $575,000.00
    Dated:              August 29, 2008
    Trustor/Grantor:     Michael J. Hanks and Julie A. Boothby, as trustees of the Marlene A. Hanks Family Trust, Dated August 29, 2008
    Trustee:           Ticor Title Company of Oregon
    Beneficiary:       TMI Lending, LLC an Oregon Limited Liability Company
    Loan No.:          Not disclosed
    Recording Date:      September 15, 2021
    Recording No.:       2021-084602

EXHIBIT 6
Page 3 of 11

Combination Form Guarantee (12/09/2015)                           OTIRO No. G-01
Printed:  01.17.23 @ 11:53 AM                          OR-TT-FNPT-02743.473626-SPS-1-23-36262300119

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

## EXHIBIT 1
(continued)

An assignment of the beneficial interest under said deed of trust which names:

Assignee:　　　　GLA Investments, LLC as to an undivided 36.52% and Hendrikus J. Bloemendaal and Nancy C. Bloemendaal, Co-Trustees of the Bloemendaal Family Trust Dated August 28, 1992, as to an undivided 63.48%
Loan No.:　　　　Not disclosed
Recording Date:　September 15, 2021
Recording No.:　　2021-084614

An assignment of the beneficial interest under said deed of trust which names:

Assignee:　　　　The Whitaker Family Limited Partnership, an Oregon limited partnership
Loan No.:　　　　Not disclosed
Recording Date:　January 5, 2023
Recording No.:　　2023-00452

9.　　A deed of trust, assignment of rents, security agreement and fixture filing to secure an indebtedness in the amount shown below,

Amount:　　　　　$250,000.00
Dated:　　　　　　September 26, 2022
Trustor/Grantor:　Richardson Creek LLC, Michael J. Hanks and Hanks Family Trust
Trustee:　　　　　First American Title
Beneficiary:　　　Steve Gibson, Sarahi Pelayo and Hector Emmanuel Pelayo
Loan No.:　　　　Not disclosed
Recording Date:　September 30, 2022
Recording No.:　　2022-52922

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Note: Property taxes for the fiscal year shown below are paid in full.

Fiscal Year:　　　202-2023
Amount:　　　　　$8,302.06
Levy Code:　　　　026-009
Account No.:　　　05006313
Map No.:　　　　　23E08C 00101

According to the County Tax Rolls the address of the subject property is:

16000 SE Keller Road, Damascus, OR 97009

## END OF EXHIBIT 1

**EXHIBIT 6**
**Page 4 of 11**

Combination Form Guarantee (12/09/2015)　　　　　　　　　　　　　　　　　　　　　OTIRO No. G-01
Printed:  01.17.23 @ 11:53 AM　　　　　　　　　　　　　　　OR-TT-FNPT-02743.473626-SPS-1-23-36262300119

Case 23-31698-dwh11　　Doc 23　　Filed 08/11/23

# EXHIBIT 2

Relative to the encumbrance to be enforced, if any, shown on Exhibit 1:

1.  Attention is directed to The Servicemembers Civil Relief Act (successor to The Soldiers' and Sailors' Civil Relief Act of 1940), which restricts proceedings against persons in the military service of the United States.

2.  Attention is called to the Federal Tax Lien Act of 1966 (Public Law 89-719) which, among other things, provides that written notice of a non-judicial sale be given to the Secretary of the Treasury or his or her delegate as a requirement for the discharge of a federal tax lien or the divestment of any title of the United States, and establishes a right in the United States to redeem the property within a period of One Hundred Twenty (120) Days from the date of such sale.

3.  Except as shown on Exhibit 1, no notice of pendency of an action for the foreclosure of the encumbrance to be enforced has been recorded in the county in which the premises are situated.

4.  This Guarantee provides no assurances with respect to any facts, rights, title, interest or claims which are not shown by the public records, and this Exhibit 2 is not intended to show the names of persons whose rights, title, interests or claims are not shown by the public records, including, without limitation, those who may be known to the Assured or who could be ascertained by an inspection of the land or by making inquiry of persons in possession of the land.

5.  If applicable, the names and addresses, as shown therein, of persons who have recorded requests for a copy of a notice of sale or notice of default, under ORS 86.806 of the Oregon trust deed statutes, are:

    NONE

6.  If applicable, the name of the Grantor in the encumbrance whose lien is to be enforced is:

    Michael J. Hanks and Julie A. Boothby, as Trustees of the Marlene A. Hanks Family Trust dated August 29, 2008

7.  If applicable, the name of the successor in interest to the Grantor is:

    Richardson Creek LLC, an Oregon limited liability company

8.  If applicable, the names of additional necessary persons not shown above to be made defendants in a suit to enforce the subject encumbrance; or, if applicable, the names of additional persons who are entitled, under the Oregon trust deed statutes, ORS 86.705 et seq., to receive notice of sale; or, if applicable, the names of additional persons who are entitled, under the land sale contract forfeiture statutes, ORS 93.905 et seq., to receive notice of default, are:

    8.1
    Steve Gibson
    20420 SE Hwy 212
    STE A PMB 308
    Damascus, OR 97089

    8.2
    Sarahi Pelayo
    Address not disclosed

    8.3
    Hector Emmanuel Pelayo
    Address not disclosed

NOTE: Any address shown in this Exhibit 2 is transcribed from a recorded or filed document; the address is not necessarily current or reliable for providing notice. For giving notice of nonjudicial sale to the Internal Revenue Service, see IRS Publications 786 and 4235. For giving notice or serving an entity, such as, without limitation, a corporation or a limited liability company, contact the entity's state of domicile business registry or other appropriate department for the entity's registered agent and principal address.

## EXHIBIT 6
## Page 5 of 11

Combination Form Guarantee (12/09/2015)                                                                                        OTIRO No. G-01
Printed:  01.17.23 @ 11:53 AM                                                                   OR-TT-FNPT-02743.473626-SPS-1-23-36262300119

Case 23-31698-dwh11     Doc 23     Filed 08/11/23

## EXHIBIT 2
(continued)

NOTE: This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances or acreage shown thereon.

**END OF EXHIBIT 2**

EXHIBIT 6

Page 6 of 11

Combination Form Guarantee (12/09/2015)                                                        OTIRO No. G-01
Printed:  01.17.23 @ 11:53 AM                                              OR-TT-FNPT-02743.473626-SPS-1-23-36262300119

Case 23-31698-dwh11     Doc 23     Filed 08/11/23

## EXHIBIT "A"
## LEGAL DESCRIPTION

Parcel 2, PARTITION PLAT NO. 2002-058, in the County of Clackamas and State of Oregon.

TOGETHER WITH a 50 foot wide easement for ingress and egress over the West 50 feet of Parcel I, PARTITION PLAT NO. 2002-058.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded October 25, 2000, Document No. 2000-069536.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000894.

ALSO TOGETHER WITH an easement for ingress and egress as described in Easement Agreement recorded January 5, 2001, Document No. 2001-000895.

EXHIBIT 6
Page 7 of 11

Combination Form Guarantee (12/09/2015)
Printed: 01.17.23 @ 11:53 AM

OTIRO No. G-01
OR-TT-FNPT-02743.473626-SPS-1-23-36262300119

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

## CONDITIONS AND STIPULATIONS

**1. DEFINITION OF TERMS**

The following terms when used in this Guarantee mean:

(a) "Land": the land described, specifically or by reference, in this Guarantee and improvements affixed thereto which by law constitute real property.

(b) "Public records": those records established under State statues at Date of Guarantee for the purposes of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.

(c) "Date": the effective date.

(d) "The Assured": the party or parties named as the Assured in this Guarantee, or in a supplemental writing executed by the Company.

(e) "Mortgage": mortgage, deed of trust, trust deed, land sale contract, or other security instrument.

**2. EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this Guarantee:

(a) (1) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or areas of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the Public Records at Date of Guarantee.

   (2) Any governmental police power not excluded by (a)(1) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Guarantee.

(b) Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Guarantee.

(c) Defects, liens, encumbrances, adverse claims against the title as guaranteed, or other matters:

   (1) created, suffered, assumed or agreed to by one or more of the Assured, whether or not shown by the public records;

   (2) not known to the Company, not recorded in the public records at Date of Guarantee but known to one or more of the Assured at Date of Guarantee;

   (3) resulting in no loss or damage to the Assured;

   (4) not resulting in the invalidity or potential invalidity of any judicial or non-judicial proceeding which is within the scope and purpose of the assurances provided; or

   (5) attaching or created subsequent to Date of Guarantee.

(d) The identity of any party named or referred to in Exhibit 2 or the validity, legal effect or priority of any matter shown in Section F of Exhibit 1.

(e) Taxes or assessments which are not shown as existing liens by the public records.

(f) Unpatented mining claims; reservations or exceptions in United States Patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

(g) Title to any property beyond the lines of the land expressly described in the description set forth in this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways on which such land abuts, or the right to maintain therein vaults, tunnels, ramps or any other structure or improvement; or any rights or easements therein unless such property, rights or easements are expressly and specifically set forth in said description.

**3. PROSECUTION OF ACTIONS**

(a) The Company shall have the right at its own cost to institute and prosecute any action or proceeding or do any other act which in its opinion may be necessary or desirable to establish or confirm the matters herein guaranteed; and the Company may take any appropriate action under the terms of this Guarantee whether or not it shall be liable thereunder and shall not thereby concede liability or waive any provision hereof.

(b) In all cases where the Company does so institute and prosecute any action or proceeding, the Assured shall permit the Company to use, at its option, the name of the Assured for such purpose. Whenever requested by the Company, the Assured shall give the Company all reasonable aid in prosecuting such action or proceeding, and the Company shall reimburse the Assured for any expense so incurred.

**4. NOTICE OF LOSS - LIMITATION OF ACTION**

A statement in writing of any loss or damage for which it is claimed the Company is liable under this Guarantee shall be furnished to the Company within sixty days after such loss or damage shall have been determined, and no right of action shall accrue to the Assured under this Guarantee until thirty days after such statement shall have been furnished, and no recovery shall be had by the Assured under this Guarantee unless action shall be commenced thereon within two years after expiration of said thirty day period. Failure to furnish such statement of loss or damage or to commence such action within the time hereinbefore specified shall be a conclusive bar against maintenance by the Assured of any action under this Guarantee.

**EXHIBIT 6**
**Page 8 of 11**

Combination Form Guarantee (12/09/2015)                    OTIRO No. G-01
Printed: 01.17.23 @ 11:53 AM                    OR-TT-FNPT-02743.473626-SPS-1-23-36262300119

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

(continued)

**5. OPTION TO PAY, SETTLE OR COMPROMISE CLAIMS**

The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage, the Company shall have the option to purchase the indebtedness secured by said mortgage.  Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder.  In the event after notice of claim has been given to the company by the Assured the Company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness and the mortgage securing the same to the Company upon payment of the purchase price.

**6. LIMITATION OF LIABILITY - PAYMENT OF LOSS**

(a)   The liability of the Company under this Guarantee shall be limited to the amount of actual loss sustained by the Assured because of reliance upon the assurances herein set forth, but in no event shall such liability exceed the amount of the liability stated within this Guarantee.

(b)   The liability of the Company under this Guarantee shall be secondary to and shall not supersede the liability of any other insurer under any existing policy of title insurance which insures one or more of the Assured, and any loss payable under this Guarantee shall be paid only to the extent it is not payable under such other existing policy.  This Guarantee is furnished for the purpose of facilitating the enforcement of the subject encumbrance or for other specific judicial or non-judicial proceeding; this Guarantee shall not be used or relied upon for any other reason.

(c)   The Company will pay all costs imposed upon the Assured in litigation carried on by the Company for the Assured, and all costs and attorneys' fees in litigation carried on by the Assured with the written authorization of the Company.

(d)   No claim for damages shall arise or be maintainable under this Guarantee (1) if the Company after having received notice of an alleged defect, lien or encumbrance not shown as an Exception or excluded herein removes such defect, lien or encumbrance within a reasonable time after receipt of such notice, or (2) for liability voluntarily assumed by the Assured in settling any claim or suit without written consent of the Company.

(e)   All payments under this Guarantee, except for attorney's fees as provided for in paragraph 6(c) hereof, shall reduce the amount of the liability hereunder pro tanto, and no payment shall be made without producing this Guarantee for endorsement of such payment unless the Guarantee be lost or destroyed, in which case proof of such loss or destruction shall be furnished to the satisfaction of the Company.

(f)   When liability has been definitely fixed in accordance with the conditions of this Guarantee, the loss or damage shall be payable within thirty days thereafter.

**7. SUBROGATION UPON PAYMENT OR SETTLEMENT**

Whenever the Company shall have settled a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured, and it shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to such claim had this Guarantee not been issued.  If the payment does not cover the loss of the Assured, the Company shall be subrogated to such rights and remedies in the proportion which said payment bears to the amount of said loss.  The Assured, if requested by the Company, shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect such right of subrogation, and shall permit the Company to use the name of the Assured in any transaction or litigation involving such rights or remedies.

**8. GUARANTEE ENTIRE CONTRACT**

Any action or actions or rights of action that the Assured may have or may bring against the Company arising out of the subject matter hereof must be based on the provisions of this Guarantee.

No provision or condition of this Guarantee can be waived or changed except by a writing endorsed or attached hereto signed by the President, a Vice President, the Secretary, an Assistant Secretary or other validating officer of the Company.

**9. NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at:

Chicago Title Insurance Company
P.O. Box 45023
Jacksonville, FL 32232-5023
Attn:  Claims Administration

**10. FEE**

The fee specified within this Guarantee is the total fee for title search and examination and for this Guarantee.  The Company may declare this Guarantee null and void for failure to pay the fee.

**END OF CONDITIONS AND STIPULATIONS**

EXHIBIT 6
Page 9 of 11

Combination Form Guarantee (12/09/2015)                                                                                OTIRO No. G-01
Printed:  01.17.23 @ 11:53 AM                                                         OR-TT-FNPT-02743.473626-SPS-1-23-36262300119

Case 23-31698-dwh11    Doc 23    Filed 08/11/23

# ENDORSEMENT

Issued By:



Attached to Guarantee Number:

**36262300119**

Date:  June 28, 2023                                                                                    Premium:  $0.00

The Company hereby assures the Assured that, subsequent to the date of the Guarantee issued under the above number, no matters are shown by the Public Records which would affect the assurances in said Guarantee other than the following:

1.      A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

   Trustee:               Miles D. Monson, Attorney at Law
   Recording Date:        February 28, 2023
   Recording No:          2023-006460

   Affects No. 8 on the Original Guarantee

2.      A notice of default under the terms of said trust deed

   Executed by:           Miles D. Monson
   Date and Time of Sale: August 2, 2023, at 11:00am, Clackamas County Courthouse, Main Street Front Steps
   Recording Date:        February 28, 2023
   Recording No:          2023-006461

3.      A deed of trust to secure an indebtedness in the amount shown below,

   Amount:                $51,085.42
   Dated:                 August 10, 2022
   Trustor/Grantor:       Richardson Creek LLC, an Oregon limited liability company
   Trustee:               First American Title Insurance Company
   Beneficiary:           Arbaugh Law, PC
   Loan No.:              Not Disclosed
   Recording Date:        March 6, 2023
   Recording No.:         2023-007160

4.      A deed of trust to secure an indebtedness in the amount shown below,

   Amount:                $92,027.72
   Dated:                 August 10, 2022
   Trustor/Grantor:       Richardson Creek LLC, an Oregon limited liability company
   Trustee:               First American Title Insurance Company
   Beneficiary:           Motschenbacher & Blattner LLP
   Loan No.:              Not Disclosed
   Recording Date:        March 6, 2023
   Recording No.:         2023-007161

5.      Property taxes in an undetermined amount, which are a lien but not yet payable, including any assessments collected with taxes to be levied for the fiscal year 2023-2024.

EXHIBIT 6
Page 10 of 11

The total liability of the Company under said Guarantee and under this endorsement thereto shall not exceed, in the aggregate, the amount stated in said Guarantee.

Customer Reference:  934-002/DD#2

**Chicago Title Insurance Company**

Countersigned By:

_____
Authorized Officer or Agent
Matthew London

EXHIBIT 6
Page 11 of 11

OTIRO Endorsement No.76                                                                              Revised 12/06/2010
Date-Down for Guarantee                                                         OR-TT-FNPT-02743.473626-SPS-1-23-36262300119